# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FREDERICK PIGRAM, MO4287, | ) | |
| Petitioner, | ) | |
| v. | ) | No. 15 C 3794 |
| TARRY WILLIAMS, Warden, Stateville Correctional Center, | ) | Judge John J. Tharp, Jr. |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

On February 11, 2009 a jury found Fredrick Pigram guilty of shooting to death Raydale Davenport outside of a neighborhood building that was hosting a community breakfast. Mot. to Dismiss Pet., ECF No. 7, 1. Pending is Pigram's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and his motion to supplement that petition. *See* Mot. by Pet'r for Leave to Supplement, ECF No 12. In his petition, Pigram contends that he should be granted a new trial because he was denied a fair trial in 2011. The respondent, Tarry Williams, moves to dismiss the petition pursuant to Rule 4 of the Rules Governing Section 2254 Proceedings as time barred. For the following reasons, Williams' motion to dismiss Pigram's petition is granted and Pigram's motion to supplement his habeas filing is denied as moot.

## BACKROUND

Raydale Davenport was shot and killed on June 30, 2006. Pigram was soon arrested and charged with Davenport's murder and with personally discharging the firearm that caused Davenport's death. ECF No. 7, 1.

At Pigram's jury trial the following testimonial evidence was presented to the jury. Davenport's cousin, "Rico," testified that he was visiting Davenport the morning of the shooting. ECF No. 7, Ex. 1, 1. Rico and Davenport then proceeded to talk to three other acquaintances who were sitting nearby. The group decided to attend a community breakfast being hosted down the street. *Id*. As they approached the back of the building, the door swung open and Pigram stepped out. *Id.* Rico testified Pigram then told Davenport "I heard you were looking for me" and removed a pistol from his waistband. *Id.* Without further warning, Pigram then shot Davenport. *Id.* As Davenport fell to the ground Pigram continued to fire. *Id.* Pigram then retreated back into the building.

Terrance Bridges, Davenport's brother, corroborated much of the above testimony. *Id.* at 1-2. Bridges testified he went to visit Davenport and was told Davenport had just left with Rico to get breakfast. *Id.* at 1. He caught up with Davenport and Rico as they approached the building where the breakfast was being held. *Id.* He then saw Pigram walk out the back door and heard Pigram ask Davenport "what was that shit you were saying." *Id.* at 2. Pigram then shot Davenport with a chrome pistol. *Id.* As Davenport fell back, Pigram stepped over him and fired another ten or eleven shots into his body. *Id.* Pigram then ran back inside the building.

On February 11, 2009, the jury returned a guilty verdict and found that Pigram had personally discharged the firearm that caused Davenport's death. *Id.* The court sentenced defendant to 50 years imprisonment. *Id.* Pigram filed a direct appeal, and the appellate court affirmed his conviction on February 22, 2011. *Id.* at 9. The Illinois Supreme Court denied his petition for leave to appeal on May 25, 2011. Pigram did not file a petition for writ of certiorari; thus, for purposes of calculating the applicable limitations period, Pigram's conviction became final 90 days later, on August 23, 2011. *See* 28 U.S.C. § 2244(d)(1)(A).

On February 3, 2012, Pigram filed a postconviction petition. *Id.* The trial court dismissed that petition and on October 21, 2013 the state appellate court affirmed the trial court's decision. Pigram filed a petition for rehearing, which was summarily denied on December 4, 2013. Pigram then filed a Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court, which was denied on March 26, 2014. Pigram again declined to file a petition for a writ of certiorari. On April 20, 2015, after seeking legal advice from a prison law clerk, Pigram mailed his pro se habeas petition from the Stateville Correctional Center.

**ANALYSIS**

In Count I of his petition, Pigram claims he was denied due process and his right to a fair trial when the prosecution "allegedly withheld exculpatory evidence that would have allowed defense counsel to pursue several viable alternative defenses." Pet. for Writ, ECF No. 1, 9. In Count II, Pigram maintains he was denied his right to a fair trial and equal protection under the law when the trial court failed to ask the venire if they understood that Pigram was presumed innocent and that the state must prove him guilty beyond a reasonable doubt. *Id.* at 10. In Count III, Pigram argues he was denied effective assistance of counsel because his trial attorney elicited testimony indicating he was a gang member and failed to raise a number of evidentiary objections. *Id.* at 18. In Count IV, Pigram maintains that his appellate counsel was constitutionally ineffective for failing to raise the above arguments on direct appeal. *Id.* at 21. In Count V, he argues that "the accumulation of errors in this case violated [his] right to due process." *Id.* at 22. The Court cannot address the merits of Pigram's contentions, however, because Pigram failed to file his petition within the one-year limitations period that applies to all habeas petitions.

I. **Pigram's Petition is Time Barred**

Williams argues in his motion to dismiss the petition, correctly, that all of Pigram's claims are time barred and equitable tolling is not warranted. Pigram maintains that his claim should be equitably tolled because he received erroneous advice regarding the filing deadline for his petition from a prison law clerk.

Federal Habeas petitions are governed by a one-year limitations period running from the latest of four triggering events: (A) the date on which the judgment became final on direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Court and made retroactively applicable; or (D), the date on which the factual predicate of the claim or claims presented would have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D).

Respondent Williams argues that under § 2244(d)(1)(A) the one-year limitations period has expired. Under subsection (A), the limitations period begins running when the judgment in a petitioner's case becomes final, and finality occurs on the date "when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely petition has been finally denied." *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994); *Robinson v. United States*, 416 F.3d 645, 647 (7th Cir. 2005) ("The Supreme Court has held that in the context of postconviction relief, finality attaches when the Supreme Court 'affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.'"). In the case at bar, the Illinois Supreme Court denied Pigram's direct appeal PLA on May 25, 2011. Supreme Court

Rule 13 provided Pigram with ninety days from the denial of the PLA to file a petition for certiorari. S. Ct. R. 13(1). Thus, because Pigram elected not to file a petition, his conviction became final for purposes of his habeas petition on August 23, 2011. *See* 28 U.S.C. § 2244(d)(1)(A).

Williams maintains, correctly, that by the time Pigram filed his habeas petition more than 365 days of untolled time had elapsed since August 23, 2011. Following the conclusion of Pigram's direct appeal, the limitations period ran for 163 days until Pigram filed his postconviction petition on February 3, 2012. Under section 2244(d)(2), the limitations period was tolled while Pigram's postconviction proceedings were pending. *Gildon v. Bowen*, 384 F.3d 883, 887 (7th Cir. 2004); *Wilson v. Battles*, 302 F.3d 745, 747 (7th Cir. 2002). The limitations period remained tolled through March 26, 2014, when the Illinois Supreme Court denied Pigram's postconviction PLA. *See Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008). The limitations clock restarted at that point and continued to run for an additional 202 days, expiring on October 14, 2014. Accordingly, Pigram's April 2015 habeas petition is untimely under section 2244(d)(1)(A).[1]

Pigram does not dispute that this calculation is correct. Pet'r's Resp., ECF No. 10, ¶ 2. He argues, however, that the limitations period should be equitably tolled because, due to his

---

[1] As the Respondent notes, Pigram asserts one claim that is possibly subject to a later start to the limitations period under section 2244(d)(1)(D). Pigram maintains that the State withheld forensic reports that would have supported his defense at trial. He claims that he discovered this evidence only after his conviction became final and the State produced the reports in response to his Freedom of Information Act request. Pigram does not specify what date he received the reports. But the latest he could have possibly discovered the evidence was in February 2012, given that his *Brady* claim relating to the reports was included in his postconviction petition filed at that time. Assuming that limitations period to Pigram's *Brady* claim ran from that date, the federal petition is still late because it was filed more than one year after the conclusion of postconviction proceedings in March 2014.

5

lack of legal training, he relied on advice (which turned out to be incorrect) about his filing deadline provided by an inmate who was working as a "law clerk" in the prison law library. *Id.* at ¶ 3. The one-year habeas limitations period can be subject to equitable tolling in appropriate cases. *See, e.g., Holland v. Florida*, 560 U.S. 631, 645 (2010). But a petitioner who is seeking equitable tolling must demonstrate that he (1) has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way, or (3) establish a claim of actual innocence. *See*, *e.g.*, *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Pigram does not make a claim of actual innocence; instead he argues that because the law clerk who works at the prison provided him with the incorrect filing deadline, he has established an "extraordinary circumstance" that warrants equitable tolling.

But the facts as Pigram present them do not call for equitable tolling. To demonstrate an extraordinary circumstance the petitioner must identify some impediment "far beyond the litigant's control" and that he diligently sought to timely file his complaint. *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). A "lack of familiarity with the law . . . is not a circumstance that justifies equitable tolling." *Taylor v. Michael*, 724 F.3d 806, 811 (7th Cir. 2013) (citing *Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008)). Missing a filing deadline, therefore, does not constitute an impediment that is beyond the litigant's control, even if the mistake is attributable to attorney incompetence,. *Lawrence v. Florida*, 548 U.S. 327, 336-37 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling."); *Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006) ("Mistakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting invocation of the doctrine of equitable tolling"); *Williams v. Sims*, 390 F.3d 958, 963 (7th Cir. 2004) ("[M]istakes of law are not a basis for equitable tolling. This is a general rule . . . [that] has been applied repeatedly to

pro se habeas corpus petitioners."); *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003) (holding that attorney incapacity was akin to attorney negligence, and thus could not serve as a basis for tolling the limitation period on prisoner's habeas petition). Ultimately, it is the responsibility of the litigant to ensure that filings are timely. *See Johnson v. McCaughtry*, 265 F.3d 559, 566 (7th Cir. 2001) (in declining to equitably toll habeas petitioner's limitation period based on attorney incompetence court noting that "clients, whether in prison or not, must vigilantly oversee the actions of their attorneys and, if necessary, take matters into their own hands.").

The case for tolling is even weaker where, as here, a prisoner relied not on the advice of an attorney with a legal duty to provide competent representation, but on information supplied by another inmate with no formal legal education and who owed him no legal duty. Though many inmates are savvy and knowledgeable about certain aspects of the law based on their own experiences and self-education, their knowledge does not absolve other inmates of responsibility for their own actions and inactions in their own cases. Thus, the fact that Pigram apparently received the incorrect filing deadline from a fellow inmate serving as a prison law clerk does not satisfy the requirements for equitably tolling the one-year limitations period. *See, e.g., DeLeon v. Florida Dep't of Corrections,* 470 Fed. App'x 732, 734 (11th Cir. 2012); *Untied States v. Nichols,* 472 Fed. App'z 856, 857 (10th Cir. 2012); *Blunt v. Smith*, No. 07-C-0080, 2008 WL 906147, at *2 (E.D. Wis. Mar. 31, 2008) (reliance on prison law clerk not grounds for equitable tolling); *Proctor v. Wright*, No. 06 C 2794, 2007 WL 433099, at *10 (N.D. Ill. Jan. 31, 2007) (petitioner's reliance on erroneous advice provided by another inmate did not warrant equitable tolling); *Nunez v. Robert*, No. 04–CV–121–DRH, 2006 WL 181683, at *5 (S.D. Ill. Jan. 24, 2006) (petitioner's reliance on the incorrect advice provided by a civilian paralegal and an inmate

7

law clerk did not amount to an extraordinary circumstance); *Robertson v. Briley*, No. 04-C-6339, 2005 WL 2266609, at *3 (N.D. Ill. Sept. 15, 2005) (reliance on the faulty advice of an inmate law clerk does not rise to the level of an extraordinary circumstance warranting equitable tolling). Inmates must beware; they rely on legal advice offered by fellow prisoners at their own peril.[2] *Chafer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010) (inmate entrusted fellow inmate with legal documents at his peril); *United States v. Cicero*, 214 F.3d 199, 205 (D.C. Cir. 2001) (inmate relied on for filing habeas petition at own peril);

Pigram points the Court to *Bounds v. Smith*, 430 U.S. 817 (1977) for the proposition that holding him liable for a prison law clerk's negligence impermissibly infringes on his constitutional right to have meaningful access to the courts. But to accept that argument would be tantamount to saying that there is a right to competent legal advice—*i.e.*, counsel—in the context of a habeas proceeding. No such right exists. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Pruitt v. Mote*, 503 F.3d 647, 657 (7th Cir. 2007) ("due process does not require appointment of counsel for indigent prisoners pursuing state postconviction remedies or federal habeas relief"). As the Supreme Court later explained in *Lewis v. Casey*, 518 U.S. 343, 351 (1996), the right of meaningful access to courts is not an entitlement to competent legal advice but rather a right to "a reasonably adequate opportunity to present claimed violations of

---

[2] Equitable tolling would also be inappropriate for the independent reason that Pigram has failed to show that he diligently sought to file his complaint in a timely manner. *See Obriecht v. Foster*, 727 F.3d 744, 751 (7th Cir. 2013). In seeking equitable tolling, Pigram must offer evidence demonstrating that he was not sitting on his rights while the limitations clock was running. *Tucker*, 538 F.3d at 735. He has not done so here. Pigram let more than five months of untolled time lapse without explanation between the conclusion of direct review and the filing of his postconviction petition. He also waited more than a year after the end of his state postconviction proceedings to file a federal habeas petition. Thus, Pigram has offered no facts indicating that he diligently sought to file his complaint in a timely manner. *See Pace*, 544 U.S. at 418-19 (finding no diligence where petitioner took no action for five months following conclusion of state court review).

fundamental constitution rights to the courts." The availability of prison "law clerks"—in actuality, untrained fellow inmates—works no interference with the right of access to the courts. Pigram does not maintain that the prison law clerk prevented him from timely filing his petition or that he was denied access to the law library where he could have identified the correct filing deadline; Pigram simply chose to rely on the advice he received from the clerk. His complaint about that bad legal advice is a claim that he was entitled to good legal advice, a proposition that *Bounds* does not support. *See Lewis*, 518 U.S. at 354 (expressly disclaiming any interpretation of *Bounds* that effectively demands the provision of counsel); *see also Murray v. Giarratano,* 492 U.S. 1, 11 (1989) ("it would be a strange jurisprudence" to extend *Bounds*' holding concerning the "right of access" to the courts to overrule *Finley*'s subsequent holding that prisoners seeking judicial relief from their sentence in state proceedings are not entitled to counsel). Thus, there is no basis to conclude that Pigram was denied meaningful access to the courts prior to the limitations period on his habeas petition expiring on October 14, 2014. The availability of a prison "law clerk" did not relieve Pigram of his own responsibility to determine the deadline for filing a habeas petition and does not constitute grounds for equitably tolling the statute of limitations.

## II. A Certificate of Appealability Shall Not Issue

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, this Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Pigram a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition. A certificate of appealability should only issue when "the applicant has made

a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, "[a] prisoner must show that reasonable jurists would find the district court's assessment of the constitutional claim and any antecedent procedural rulings debatable or wrong." *Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). Here, because it is well settled that attorney or law clerk negligence is not grounds for equitable tolling, reasonable jurists could only conclude that Pigram's claim is untimely. *See*, *e.g.*, *Lawrence* 548 U.S. at 336-37; *see also Owens v. Boyd*, 235 F.3d 356, 357-58 (7th Cir. 2000) ("After denying the petition, the district court issued a certificate of appealability identifying the application of § 2244(d)(1) as the issue for appeal. This was a mistake…[w]hether a given petition is timely is a question under § 2244, not under the Constitution, and therefore…not enough to support a certificate of appealability.").

\* \* \*

Pigram's petition for writ of habeas corpus is dismissed as untimely and a certificate of appealability shall not issue. Accordingly, Pigram's motion to supplement his habeas petition is also denied as moot.

Date: April 19, 2016

John J. Tharp, Jr.
United States District Judge